

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

<table>
<tr><td>

UNITED STATES OF AMERICA *ex rel.*
PATRICIA CAMPBELL,

    *Plaintiffs,*

v.

1. **ALL-AMERICAN MEDICAL SUPPLIES, INC.,**[1]
2. **ALL-AMERICAN MEDICAL SUPPLIES, LLC,**
3. **GLOBAL HEALTHCARE MANAGEMENT, LLC,**
4. **OXFORD DIABETIC SUPPLY, INC.,**[2]
5. **PULSE INNOVATIONS, LLC,**
6. **U.S. HEALTHCARE PHARMACY, LLC,**
7. **U.S. HEALTHCARE SUPPLY, LLC,**
8. **LETKO ASSET MANAGEMENT, LLC,**
9. **LETKO HOLDINGS, LLC,**
10. **LETKO INVESTMENTS, LLC,**
11. **MILFORD MANAGED SERVICES, LLC,**
12. **EDWARD LETKO,**
13. **JAMES LETKO,** *and*
14. **JON LETKO,**

    *Defendants*

</td><td>

No. 3:16-CV-09347-GC-RLS


ANSWER

DENIAL OF AMENDED QUI TAM COMPLAINT

</td></tr>
</table>

This Answer to the First Amended Complaint is sent to the Clerk on behalf of Pulse Innovations, LLC.

Pulse Innovations, LLC. denies all allegations in the Complaint. Attorneys for Plaintiff have fabricated facts about Pulse Innovations LLC. Pulse Innovations LLC should not be a party to this lawsuit.

Pulse Innovations, LLC. objects there is jurisdiction to include them in this lawsuit. Pulse Innovations, LLC. does not have an operating office in New Jersey nor has Pulse Innovations, LLC. ever had an operating office in the State of New Jersey. Additionally, the owner of Pulse Innovations, LLC. is a Pennsylvania resident and does not live in New Jersey.

---

[1] Named in the original Complaint as "All-American Medical Supply Co."
[2] Names in the original Complaint as "Oxford Healthcare Supply, LLC."

I am writing in response to the "Summons and Amended Complaint" document delivered to the office of Pulse Innovations, LLC. on May 15, 2023.  A package of documents was **left** by FedEx, addressed to a former employee, Nicole Deemer.  On or about May 31, 2023, a scan of these documents was sent to me, and I am responding to this complaint.

Relator Patricia Campbell and her attorney, Patrick Almanrode have created an illusion of fraud occurring in a current business as well as former businesses.  These claims have been made without evidence, omissions of facts, misrepresentations and, in cases, blatant lies.  The story being told relies on 2 government actions to paint myself and businesses along with the other Defendants as bad actors.  The Relator and her Attorney intentionally and carefully organized certain businesses that had billed larger volumes of claims to the government to sensationalize the largest number possible to in turn collect the largest award possible.

The first action referenced is the settlement between US Healthcare/Oxford Diabetic and the Department of Justice.  This settlement is being used as a basis to make use of the word fraud.  The government thoroughly investigated this matter sometime in or before 2008, up until there was a resolution in 2016.  Please note that in 2008 I was 22 years of age, and I accepted a professional opportunity, presented to me by Edward Letko, to own US Healthcare. Edward Letko is my older brother by 18 years.  I was unaware of any government concerns prior to the investigation being initiated.  Initially, unsolicited calls were a concern of the government and what is why the investigation began.  While I can only speak for US Healthcare and entities that I controlled, the concerns of the government were taken incredibly seriously.  All marketing was suspended and only re-enacted after attorney review. This allowed US Healthcare to grow as a company while it was being investigated.  The settlement was based on a period when US Healthcare was a new company and had done very little business.  The use of the words "cold calling" or "unsolicited calls" are being intentionally used out of context by the Relator to create a basis for this action.  It is important to note that no claims were deemed inappropriate for any marketing that occurred once attorney review was completed.  To my recollection this was completed in late 2009.  Lastly, US Healthcare was a Part B DMEPOS entity.  At no time did they service a pharmacy claim or any part D claim billed to a Medicare payer.  The Relator and her Attorney are intentionally presenting the facts in a misleading way to find a way to use this action as part of the claim they have created.

In addition to paying the settlement I agreed to a 5-year Corporate Integrity Agreement (CIA) which not only applied to US Healthcare but reporting on **all entities** that I owned.  Each year, I needed to complete a substantial report and submit to a government appointed monitor. An Independent Review Organization (IRO) comes on-site to audit the business as a whole and review random samplings of claims.  This program requires the utmost attention to every detail reviewed and passing a review required very high standards.  This report then gets submitted to the government monitor for review.  The monitor may request additional information from both the company or IRO.   Each year I managed to meet and exceed these standards to maintain Medicare billing privileges.  Additionally, please note that a CIA can only be reached if there is evidence of good faith and the ability to correct a mistake.  The alternative to a CIA is to be excluded from the Medicare program all together.  Neither myself personally nor any of my

business entities, including the ones listed in this claim were ever excluded from Medicare billing privileges.  The Relator and her Attorney ignored the facts and the level of commitment it takes to adhere to a CIA or an IRO audit. Furthermore, all claims reviewed were carefully audited for means of contact and solicitation as part of the review. If evidence of cold-calling or solicitation occurred, the IRO requirements would not have been met and I believe I would have had my billing privileges to Medicare excluded.

It is evidently clear that the Relator used the US Healthcare action to motivate her to find anything she could to formulate a *qui tam* case.   This was just an attempt by Relator's to make as much money as possible based on falsehoods.   On or about 2017 the government did begin an investigation using both Michigan and New Jersey federal resources.  Michigan presided over the investigation of James Letko and his entities while New Jersey oversaw the investigation of myself and my entities.    To my understanding, in addition to New Jersey, Michigan also investigated my entities since I had a business relationship with my brother, James Letko.

The second action that the Relator and her Attorney are misusing to build a false case is the plea agreement entered into by James Letko.  This agreement was entered into after a long-time investigation took place which conveniently covers many of the exact same issues that the Relator raised in her claim.  This case is redundant and duplicates years of work by both the government and my legal defense.  Furthermore, there has been no action by the government against me personally or any of my entities after being investigated.  Frankly, I find is highly unlikely that the *qui tam* complaint and the investigations are not related.  The Relator filed her *qui tam* complaint in late 2016 and a government investigation of my businesses began in early 2017.   Based on this timeline, it is clear the government, through their own resources in New Jersey or Michigan, took action to investigate myself and my businesses at the time.  Upon completion of the investigation, they decided **NOT** to proceed with criminal charges or a civil demand.  The Relator and her Attorney must accept closure that there is no fraud now and there was no fraud back when she was employed in 2016, 7 years ago.  The Attorney is obligated to fully investigate the facts and has not done so.

Instead of processing and considering the facts, the Relator and her Attorney are using an incredibly sad situation that related to my brother's plea agreement, to attempt to revive their opportunity for a large pay day.  In the Summons and Amended Complaint, the Relator and her Attorney purposefully named Pulse Innovations as a new defendant and made claims that it is a front for Global Healthcare.  These assertions are remarkably untrue and clearly show that the Relator and her Attorney are willing to do anything to move this case forward, even create lies. **This is a lie under oath, and this must not be tolerated**.  Below you will find a summary describing each Defendant:

**Pulse Innovations, LLC.** is a system integration company that specializes in using RFID to track and manage assets such as hotel linens or goods in a warehouse.  This is the only company listed as a Defendant that I own that still operates and it is not a "front" for Global Healthcare.  Pulse is not a healthcare provider.  Pulse is not providing services to healthcare providers.  Pulse does not bill insurance.  Pulse is not registered to participate in any healthcare programs.   In creating Pulse Innovations, a new company, employment opportunities were

extended to several capable individuals who met the requirements of their job I was hiring for. In addition, employees were hired that were new hires and there was no existing business relationship. It is unfathomable to me that this would constitute calling my business a front. It is outrageous!  The Relator's Attorney has no basis or credible information to support this assertion.  In fact, it's the opposite.  Any information about the company was disregarded intentionally.  Including Pulse Innovations, LLC. in this complaint was a calculated plan to find an active business of mine to find a way to continue this matter forward.  The tactic used by the Relator and her Attorney must clearly be seen.  Find an active company.  Create a false depiction of the company to find a way to include it in a lawsuit.  Use that company as an address to FedEx documents that are unrelated to them.

Pulse Innovations, LLC. has a web address of www.pulseinnovations.net and this website accurately describes the services and products offered by the company.

Below are several screenshots that can be found on this website:









Pulse Innovations, LLC. must be dismissed from this case and requests the appropriate disciplinary measures for the Relator and her Attorney for their misconduct.

**Global Healthcare Management, LLC.** was a service provider to healthcare entities who billed insurances. Global never billed insurance and was not a covered entity. Because Global did not bill and was not a covered entity it is not possible for them to have violated the False Claims Act. All services which were conducted were done so by trained staff who were overseen by a Compliance Officer whose job was to proactively address and resolve issues such as the ones she has claimed. I don't recall the Relator using this resource. In the event pharmacy duties were being performed, they were completed in licensed pharmacy space, under the supervision of a licensed pharmacist who was overseen by a Director of Pharmacy, who was also a licensed pharmacist. Global was a well-organized and well operated company, not the illusion the Relator paints. Global stopped performing services and receiving revenue several years ago (approximately 5 years) and has been in the process of winding down to be dissolved. Global Healthcare Management, LLC. must be dismissed from this case.

**US Healthcare Supply, LLC.** was a Medicare Part B DMEPOS supplier and dispensed products such as glucose meters, diabetic supplies, and orthopedic braces. US Healthcare used to maintain a website, www.ushsnj.com. US Healthcare at no point ever provided pharmacy services or billed for pharmacy services. Any of the claims by the Relator and her Attorney rely on no actual knowledge about US Healthcare or how it operated. They merely took an adverse action made against the company 15 years ago (resolved 7 years ago) and are using it to create an ability to file a complaint such as this. US Healthcare can acknowledge that it is possible to fix a mistake and continue to operate during an investigation. The Relator and her Attorney have absolutely no evidence to make any claims about this company other than reciting what is publicly available in the settlement agreement. The company was investigated for nearly 8 years and met the terms of the 5-year Corporate Integrity Agreement that began in 2016 (the year the Relator was employed). Any claims billed for each year were reviewed by the IRO, including

marketing and contact of the patient.  US Healthcare stopped marketing over 6 years due to competitive bidding.  Operations decreased and the company has since been dissolved.  It is clear why the Relator and her Attorney chose to name US Healthcare Supply, LLC.  They were in business a long time and billed the government a large gross claim value over that time.  There was a regulatory infraction which led to a settlement but there is no basis for their inclusion and must be dismissed from this complaint.

**US Healthcare Pharmacy, LLC., Letko Asset Management, LLC., Letko Holdings, LLC., Letko Investments, LLC., and Milford Managed Services, LLC.** are all holding companies that are no longer active and have been dissolved or are being dissolved.  None of these entities had employees.  They did not bill insurance and were not covered entities.  Since no billing from these companies occurred it is not possible for these companies to have violated the False Claims Act.  Again, the Relator and her Attorney clearly were seeking any avenue to find a company, any company to attach to this lawsuit.

**Please take note that this case raises issues with submitting Medicare Part D pharmacy claims.  Not one of the business entities attached to my ownership in this complaint is a pharmacy.  None of these entities billed a pharmacy claim. Had the Relator and her Attorney reviewed any of the information they submitted to the court, they would have come to the same conclusion.**

While the Relator was employed, she was under the supervision of a pharmacist while performing her job and she did her job in licensed pharmacy space which is normal in the Commonwealth of Pennsylvania.  The location that she worked in had a strictly designated retail pharmacy space while other space was considered licensed pharmacy space, and this is normally used for services such as central fill or central processing which is a normal pharmacy task used by thousands of pharmacies.  The Relator also had access to a certified Compliance Officer, whose job is to be aware of industry and payer policies and ensure company policies and procedures are in place.   Furthermore, the Relator and her Attorney have made misrepresentations when claiming there are fake pharmacies, or the pharmacies are just store fronts.  Each pharmacy was a licensed pharmacy operated by a licensed pharmacist and adhered to the applicable Board of Pharmacy regulations and Medicare Part D policies or guidelines.  If I operated a business that was not a pharmacy, they never identified as a pharmacy or advertised they were a pharmacy.  The use of the wording of their being fake pharmacies has absolutely no evidence to support it and in fact is another lie. This is a bold statement made with literally no evidence.

In the amended complaint the Relator and her Attorney provided a series of Exhibits.  First, there is a serious concern in the fact that the Relator, without permission, removed protected health information (PHI) and other HIPAA protected information from company premises.  This was against company policy as we took this protected information very seriously.  I would like to request that all company-related information and documentation be copied and provided for further review and inspection of what PHI left company premises.  Additionally, the way the Relator and her Attorney included non-redacted PHI in the Exhibit listing is a violation of HIPAA.  No documents should reveal full names, complete with address, date of birth and

doctor information. Equally concerning are the Exhibits related to "cold calls." The Refill Confirmation Script provided was a call guide for a refilled prescription. This means a patient expressed interest in the pharmacy, they enrolled, their doctor was sent an order that they completed, and they were shipped the ordered product. Each prescription has an amount that the doctor ordered, and it is to be refilled monthly or quarterly. It is abundantly clear that the Attorney did not do his job by doing diligence or asking for more concise information from his client. Medicare Part D plans require each refill to be confirmed prior to a refill being sent. Hence, to be compliant with Medicare Part D we were required to communicate with each patient before each order. These are not cold calls, there was an existing patient/provider relationship. The other call guide I saw was for Patient Retention calls. This was used to communicate with patients who canceled service which they received. Again, these are not cold calls. Retention calls were used to provide important feedback to the company about ways to improve service. Through these calls sometimes a patient may choose to not cancel their service or utilize another service that was offered.

The Relator has carefully manipulated company communications to be used out of context so she can create supportive value to her claim. In fact, there is no evidence of any laws being broken in any of the Exhibits provided. There are spreadsheets of where pharmacies are licensed and what plans they can accept. To do business a pharmacy needed to be licensed in their home state and any other state they did business in. Each plan required a contract. In fact, there are thousands of contracts and plans that can be accepted by a pharmacy. As a mail order provider, it was important to know if the pharmacy can perform the service requested by the customer, which is why a network matrix is important to have as a reference. Additionally, it was important for a patient to know their out of pocket expense which is why a "test claim" may have been submitted. The proper way of wording this practice is adjudicating a claim to determine out of pocket expense. Again, this is a process that most pharmacies will do for their customers.

Operating an independent pharmacy was a unique business to operate because aside from it being a highly regulated business, the Pharmacy Benefit Managers (PBM) which were the paying plans, and in many cases owned their own mail order pharmacies or pharmacy networks. Several of the larger paying PBMs we did business with, after research, had CIA agreements of their own or had some sort of settlement with the government, yet they could still bill claims and process claims. Often a PBM would attempt to eliminate a competing "mail order" pharmacy only to move those plan members into their own mail order pharmacy to reap the rewards.

Lasty, my former attorney had communication with the Attorney representing the Relator and explained that the companies are either not in business or not active and being dissolved. It is my understanding that a concern was relayed to the Relator's Attorney that many of the facts in the complaint are not accurate. After this communication, I believe this is when Pulse was added as a defendant. Pulse was added as a defendant and the nature of Pulse's business was lied about as a desperate attempt to find any mechanism to claim I am still in business in the healthcare sector. This could not be more untrue.

Page **8** of **9**

In summary, all claims made by the Relator and her Attorney must be dismissed. This complaint was carefully planned and structured to line the pockets of the Relator with millions of dollars. Clearly, she has been motivated by the 15-30% recovery award she may be entitled to if the government is successful in their case. The government chose to not proceed with this complaint after a long and thorough investigation. Now the Relator and her Attorney are attempting to duplicate years of investigation by the government and years of me defending myself. They are willing to cut corners with service and rather than do it properly, they claim I am attempting to evade service. They are willing to disregard facts. This complaint lacks facts and evidence and has proven that the Relator and her Attorney are willing to lie and say anything they can to find a way to advance their own financial benefit.

Respectfully submitted,

Jon P. Letko
50 Melchor Drive
Easton, PA 18042
jl3tko@gmail.com

PRESS FIRMLY

RMLY TO

U.S. POSTAGE PAID
PM
RIEGELSVILLE, PA
18077
JUN 16, 23
AMOUNT
$9.65
RDC 23          08608          R2304M112364-09

 

# UNITED STATES
# POSTAL SERVICE ®

# PRIORITY
# MAIL

MAIL
VELOPE
QUIRED

FROM:

Jon Letko
50 Melcnor Dr
Easton, PA 18042

lelivery date specified for domestic use.

hipments include $100 of insurance (restrictions apply).*

king® service included for domestic and many international destinations.

ernational insurance.**

internationally, a customs declaration form is required.

not cover certain items. For details regarding claims exclusions see the
anual at *http://pe.usps.com.*

al Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

RECEIVED

JUN 20 2023

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ.

TO: Clerk's Office
NJ District Court
402 E. State Street
Room 2020
Trenton, NJ 08608

RATE ENVELOPE

■ ANY WEIGHT

KED ■ INSURED

To schedul
sca

EXPECTED DELIVERY DAY:  06/17/23

USPS TRACKING® #



This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; July 2022; All rights reserved.